FILED

2026 Mar-25  PM 03:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM E. MATTHEWS, VI,     ) | |
|         ) | |
|      Plaintiff,     ) | |
|         ) | |
| v.     ) | |
|         ) | |
| ANTARIS TECHNOLOGIES, INC., *et al.*,     ) | |
|         ) | |
|      Defendants,     ) | |
|         ) | |
| ANTARIS TECHNOLOGIES, INC., *et al.*,     ) | |
|         ) | |
|      Third Party Plaintiffs,     ) | |
|         ) | |
| v.     )    Case No. 2:25-cv-00889-SGC | |
|         ) | |
| GYM BUSINESS MANAGER, LLC,     ) | |
|         ) | |
|      Third Pary Defendant,     ) | |
|         ) | |
| ANTARIS TECHNOLOGIES, INC.,     ) | |
|         ) | |
|      Counter Plaintiff,     ) | |
|         ) | |
| v.     ) | |
|         ) | |
| WILLIAM E. MATTHEWS, VI,     ) | |
|         ) | |
|      Counter Defendant.     ) | |

**MEMORANDUM OPINION AND ORDER**[1]

This action stems from a business relationship between plaintiff William E. Matthews, VI, and defendants Antaris Technologies, Inc. ("Antaris, Inc."), and Antaris Technologies USA Inc. ("Antaris USA") (collectively, "Antaris") that went south. (*See* Doc. 14).[2] Louis Beliveau, Giovanni Piediscalzi, and James Flynn, who were either independent contractors for or employees of Antaris, are also named as defendants. (*Id.*). The defendants have moved to dismiss Beliveau, Piediscalzi, and Flynn (the "Individual Defendants") for lack of personal jurisdiction and to dismiss Counts IV (Civil Conspiracy) and Counts V (Tortious Interference with Business Relationships) of the amended complaint for failure to state a claim upon which relief can be granted. (Doc. 18). The motion is fully briefed and thus ripe for adjudication. (Docs. 25, 31). For the reasons set forth below, the defendants' motion will be granted.

## I. Procedural History

Matthews initiated this action by filing a complaint in the Circuit Court of Jefferson County, Alabama, on April 24, 2025. (Doc. 1-1). Invoking this court's diversity jurisdiction, the defendants timely removed the action on June 9, 2025. (Doc. 1). The defendants then moved to dismiss the original complaint. (Doc. 10).

---

[1] The parties have unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 30).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

2

Matthews amended his complaint on August 14, 2025, stating the following five claims: (1) breach of contract against Antaris; (2) invasion of privacy against Antaris and Beliveau; (3) defamation/slander against Antaris, Piediscalzi, and Flynn; (4) civil conspiracy against all defendants; and (5) tortious interference with business relationships against Antaris, Piediscalzi, and Flynn. (Doc. 14). The court denied as moot the defendants' first motion to dismiss. (Doc. 15). The defendants then filed a partial motion to dismiss the amended complaint. (Doc. 18). Matthews timely responded, and the defendants timely replied. (Docs. 25, 31).

Antaris also filed an answer to Matthews's amended complaint, along with a counterclaim against Matthews and a third-party complaint against Gym Business Manager, LLC ("GBM"). (Doc. 19). The counterclaim and third-party complaint states three causes of action: (1) breach of contract against Matthews; (2) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA") against Matthews and GBM; and (3) defamation against Matthews and GBM. (*Id.*). Matthews and GBM moved to dismiss Antaris's counterclaim and third-party complaint. (Doc. 26). This motion to dismiss is also fully briefed, ana the court will address it in a separate memorandum opinion. (*See* Docs. 32, 33).

## II. Alleged Facts

The amended complaint alleges the following facts. Matthews is a shareholder of Antaris, Inc., and a former employee of Antaris USA. (Doc. 1 at 3).

Upon his separation from Antaris USA, Matthews and Antaris entered into a Settlement Agreement and General Release in which Antaris acknowledged that Matthews would engage in business activities that would directly or indirectly compete with Antaris. (*Id.*). Nevertheless, Antaris and Beliveau (an independent contractor for Antaris) attempted to damage and defame Matthews and interfere with his ongoing business activities by, among other things, installing software on Matthews's mobile device and laptop (and those of Matthews's wife) that restricted Matthews's access to potential new customers, tracked his email accounts, and monitored his business activities. (*Id.* at 4).

Antaris also agreed not to disparage Matthews but nevertheless attempted to defame Matthews to undermine his business activities. (*Id.*). More specifically, Antaris, Flynn, and Piediscalzi told Antaris employees and customers (in Alabama and other states) that Matthews was terminated because he routinely presented falsified financial documents to customers and engaged in other deceitful billing practices. (*Id.* at 5).

Further, Antaris agreed to make recurring payments to Matthews and to treat those payments as wages for tax purposes by making lawful tax deductions and withholdings. (*Id.*). Nevertheless, when Matthews separated from Antaris, it stopped withholding Alabama state income taxes from the payments to Matthews, which resulted in fines and penalties to Matthews. (*Id.*). Antaris also agreed to pay

4

Matthews based on recurring revenues from specified customers, but it stopped paying those commissions for at least one, if not more, customers. (*Id.* at 6). Antaris has also failed to comply with the agreed-upon process governing disputes for these payments. (*Id.*).

## III. Standard of Review

The defendants' motion to dismiss invokes Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), which are governed by different standards. (Doc. 18).

### A. Rule 12(b)(2) Standard

Rule 12(b)(2) permits a defendant to move for dismissal for lack of personal jurisdiction. A plaintiff bears the initial burden to establish a prima facie case of personal jurisdiction over a nonresident defendant. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002). A plaintiff establishes a prima face case of personal jurisdiction by "alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999)); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006). At this stage, and for purposes of a Rule 12(b)(2) motion, the court accepts the allegations in the complaint as true if they are uncontroverted by affidavits or deposition testimony. *Snow,* 450 F.3d at 1317.

Where, as here, the defendant challenges jurisdiction by submitting affidavits in support of its position that contradicts the allegations in the complaint, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier*, 288 F.3d at 1269. When the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court construes all reasonable inferences in favor of the plaintiff. *Id.*

## B. Rule 12(b)(6) Standard

Dismissal under Rule 12(b)(6) is appropriate if a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

6

## IV. Analysis

The defendants present three arguments in support of their motion to dismiss. First, they argue this court lacks personal jurisdiction over the Individual Defendants. Second, they contend Matthews has failed to state a claim for tortious interference with business relationships. Finally, they ask the court to dismiss Matthews's conspiracy claim pursuant to the intracorporate conspiracy doctrine.

### A. Personal Jurisdiction

The amended complaint alleges Beliveau is a resident of Ontario, Canada, and Piediscalzi and Flynn are residents of Illinois. (Doc. 14 at 2). The Individual Defendants, who submitted supporting affidavits, argue there is no basis for general or specific jurisdiction over them because they have virtually no contacts with the State of Alabama. Matthews responds that the Individual Defendants are subject to specific personal jurisdiction because his claims arise out of their purposeful contacts with Alabama.[3]

As the plaintiff, Matthews bears the burden of alleging sufficient facts to make out a *prima facie* case of specific jurisdiction over the nonresident Individual Defendants. *See Meier*, 288 F.3d at 1268-69. This court may exercise specific jurisdiction over a nonresident defendant if (1) there is a statutory basis for exercising such jurisdiction and (2) the exercise satisfies federal constitutional due

---

[3] Because Matthews relies only on specific jurisdiction, the court will not analyze whether it has general jurisdiction over the Individual Defendants.

process requirements. *See Courboin v. Scott*, 596 F. App'x 729, 732 (11th Cir. 2014). The statutory basis for exercising specific jurisdiction may be a federal statute or the long-arm statute of the state in which a federal court sits. *Id.*

Matthews does not claim any particular statute permits the exercise of specific jurisdiction and instead relies on Alabama's long-arm statute, codified at Rule 4.2(b) of the *Alabama Rules of Civil Procedure.* Because that statute permits the exercise of specific personal jurisdiction over a nonresident defendant "to the fullest extent" permissible under the U.S. Constitution, the two-pronged inquiry set out above collapses into a single question: whether the exercise of specific jurisdiction over the defendants satisfies due process requirements. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

The exercise of specific jurisdiction over a nonresident defendant satisfies federal due process requirements if (1) a plaintiff's claims arise out of or relate to the defendant's contacts with the forum state, (2) the defendant purposefully availed himself of the privileges of conducting activities in the forum state, and (3) the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (internal quotation marks omitted). A plaintiff bears the burden of establishing the first two requirements. *Id.* at 1229. If a plaintiff succeeds in

making the showing, the burden shifts to the defendant to make a compelling case demonstrating the exercise of jurisdiction would be improper. *Id.*

There are two tests for determining whether a defendant purposefully availed himself of the privilege of conducting activities in the forum state and thus may be subject to jurisdiction in the forum. The "minimum contacts test"—the traditional test—identifies all the defendant's contacts with the forum state and asks whether, individually or collectively, the contacts (1) are related to the plaintiff's claim, (2) involve an act by which the defendant purposefully availed himself of the privileges of conducting activities in the forum state, and (3) are such that the defendant should reasonably anticipate being haled into court in the forum state. *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1276 (11th Cir. 2022). The "effects test" contemplates that a nonresident defendant's single tortious act may establish purposeful availment. *Id.* The test is met when the tortious act was intentional, aimed at the forum state, and caused harm the defendant should have anticipated would be suffered in the forum state. *Id.*

In his amended complaint, Matthews alleges the Individual Defendants directed activity at Alabama by, in Beliveau's case, installing software on Matthews's phone and, as to Piediscalzi and Flynn, communicating with Alabama customers about Matthews. Though brief and vague, these allegations are sufficient to make out a prima facie case of jurisdiction.

9

The Individual Defendants challenge jurisdiction by submitting affidavits that directly contradict Matthews's allegations. (Docs. 18-1, 18-2, and 18-3). Beliveau's affidavit states:

- He is an independent contractor for Antaris, Inc., and mostly provides server administration services;

- He has resided in Canada his entire life;

- He has no personal contacts with the State of Alabama, has never traveled to Alabama, and has never conducted business in Alabama; and

- He has not invaded Matthews's privacy by installing software on his or his wife's electronic devices.

(Doc. 18-1). Flynn states:

- He is employed by Antaris USA as a vice-president of sales;

- He resides in Chicago, Illinois, and has resided in Illinois his entire life;

- He has no personal contacts with the State of Alabama;

- He has not worked with any Antaris USA customer in Alabama;

- He has never conducted business within Alabama for Antaris or otherwise;

- He has visited Alabama once, in 2019, before he was employed with Antaris;

- He has never spoken to a customer, in Alabama or elsewhere, about why Matthews left Antaris; and

- He has not spread any false information about Matthews to Antaris customers or employees in Alabama or elsewhere.

(Doc. 18-2). Piediscalzi states:

- He is employed by Antaris USA as a senior solutions engineer;

10

- He resides in Chicago, Illinois, and has resided in Illinois his entire life;

- He has no personal contacts with the State of Alabama;

- He has worked with two Antaris USA customers in Alabama in a limited capacity;

- He traveled once to Alabama in 2023 to conduct onsite training for an Antaris customer, and he occasionally provides technical support to this customer through email;

- From March 2023 to December 2024, he provided technical support to another Antaris customer in Alabama through email or over the phone, but never visited the customer's site;

- He has never spoken to a customer, in Alabama or elsewhere, about why Matthews left Antaris, and he does not know why Matthews left Antaris; and

- He has not spread any false information about Matthews to Antaris customers or employees in Alabama or elsewhere.

(Doc. 18-3). The Individual Defendants argue their lack of contact with Alabama demonstrate Matthews's claims do not arise out of or relate to their contacts with Alabama and that they did not purposefully avail themselves of an Alabama forum.

Matthews did not refute the Individual Defendants' affidavits with his own affidavits or other evidence. Instead, he asserts the amended complaint's allegations that the Individual Defendants committed intentional torts, thereby directing conduct at Alabama, satisfy his burden. Citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1351 (11th Cir. 2013), Matthews also argues the Individual Defendants' affidavits are conclusory and therefore insufficient to shift back to him the burden to produce evidence supporting jurisdiction.

11

The court disagrees. In *Louis Vuitton*, the defendant moved to vacate a default judgment against him based on lack of personal jurisdiction. His affidavit stated (1) he was never served with the lawsuit, (2) he resided in New York and conducted no business in Florida, and (3) he was not affiliated with the websites at issue in the lawsuit. *Id.* at 1347. The defendant ultimately withdrew his claim that he was not served. *Id.* Further, his affidavit "did not deny, much less rebut, the complaint's detailed allegations that substantial quantities of" the plaintiff's goods were being sold through the relevant websites. *Id.* at 1347. In response to the defendant's affidavit, the plaintiff filed affidavits from investigators to support its allegations that the defendant was connected to the websites. *Id.* at 1348. Following an evidentiary hearing, the district court found the plaintiff met its burden to show the necessary contacts with the state of Florida and denied the defendant's motion to vacate. *Id.* at 1349.

In *Louis Vuitton*, the Eleventh Circuit acknowledged the general proposition that a defendant's conclusory affidavit does not shift to the plaintiff the burden to produce evidence to support jurisdiction, and the court suggested the defendant's three-paragraph affidavit was conclusory when compared to the complaint's extensive allegations. *Id.* at 1350. Nevertheless, for purposes of appeal, the court assumed the defendant's affidavit was sufficient to create a fact issue that shifted the evidentiary burden back to the plaintiff. *Id.* at 1351. Ultimately, the court

concluded the district court did not err in denying the defendant's motion to vacate the default judgment for lack of personal jurisdiction because the plaintiff's proof sufficiently established the defendant's contacts with Florida. *Id.* at 1359.

Unlike the complaint in *Louis Vuitton*, Matthews's amended complaint contains few details. It does not identify the date or approximate time frame when any of the alleged conduct occurred. Further, it does not identify any Antaris customer or employee with whom the defendants allegedly communicated to either disparage Matthews or interfere in his expectation of a business relationship. The Individual Defendants' affidavits are similarly brief; however, they directly address and deny Matthews's vague allegations regarding their contacts with Alabama. Therefore, the court finds the defendants' denials sufficient to shift the burden back to Matthews to produce his own evidence to support his allegations of personal jurisdiction, which he did not do.

### 1. Jurisdictional Discovery

Alternatively, Matthews proposes conducting jurisdictional discovery into the Individual Defendants' contacts with Alabama. (Doc. 25 at 7). He seeks "limited discovery of the Antaris's Alabama customers and these Individual Defendants' phone, text, and e-mail communications with those customers and prospective customers" so he can further establish the Individual Defendants'

contacts with Alabama. (*Id.* at 8). The Individual Defendants oppose jurisdictional discovery. (Doc. 31 at 5).

When facts that go to the merits of the case and the court's jurisdiction are intertwined and genuinely in dispute, parties have a "qualified right to jurisdictional discovery, meaning that a district court abuses its discretion if it completely denies a party jurisdictional discovery, unless that party unduly delayed in propounding discovery or seeking leave to initiate discovery." *Am. C.L. Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017) (internal citations and quotations omitted); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999) (plaintiffs were not erroneously denied jurisdictional discovery where they made "no discovery efforts . . . in the eight months between the time [they] filed the complaint and the time it was dismissed"); *Mazer*, 556 F.3d at 1281 (district court did not abuse its discretion in dismissing complaint before jurisdictional discovery where the plaintiff did not separately move for jurisdictional discovery, seek deferral of a ruling pending discovery, or take "every step possible to signal to the district court its immediate need for such discovery" but "despite the obvious urgency of the situation," instead, "buried such requests in its briefs as a proposed alternative to dismiss[al] on the state of the current record"). "The right to jurisdictional discovery is a qualified one, available 'when a court's jurisdiction is genuinely in dispute.'" *Wolf v. Celebrity Cruises, Inc.*, 683 F.

14

App'x 786, 792 (11th Cir. 2017) (quoting *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730 (11th Cir. 1982)). Jurisdictional discovery requests may not "serve as fishing expeditions, and, as such, are appropriate only when 'a party demonstrates that it can supplement its jurisdictional allegations through discovery.'" *Wolf*, 683 F. App'x. at 792 (citation omitted).

Here, the parties conducted their Rule 26(f) conference on August 11, 2025, before Matthews filed his amended complaint and, therefore, before the defendants moved to dismiss the amended complaint. (Doc. 23 at 1). Nevertheless, the parties' planning meeting report, which was filed on September 9, 2025, acknowledges the defendants' August 28 motion to dismiss the amended complaint. (Doc. 23 at 1). Further, the defendants' original motion to dismiss also challenged the court's personal jurisdiction over the Individual Defendants. (Doc. 10). Thus, Matthews has been aware of the Individual Defendants' arguments regarding personal jurisdiction since at least August 2025.

Rule 26(d) permits the parties to conduct discovery after they have conferred pursuant to Rule 26(f). Here, the parties disclosed to the court that they would revise their Rule 26(f) report once third-party defendant GBM appeared. (Doc. 23 at 2). Given that representation, the court did not enter a scheduling order; the parties never submitted a revised planning report; and following a January 2026

15

telephone conference, the court stayed discovery pending resolution of the motions to dismiss. (Doc. 35).

The current Rule 26 report does not specifically seek jurisdictional discovery. Matthews did not separately move for jurisdictional discovery, nor did he ask the court to defer ruling pending some limited discovery. Instead, he "buried" the request in his response to the motion to dismiss. *See Mazer*, 556 F.3d at 1281. Matthews therefore did not take "every step possible to signal to the district court [his] immediate need for such discovery" "despite the obvious urgency of the situation." *See id.* Moreover, the court is troubled that Matthews was either unwilling or unable to produce any evidence to support his allegations concerning the Individual Defendants' contact with the State of Alabama.[4] Even in the absence of some proof that the Individual Defendants engaged in the conduct of which they are accused, Matthews could have submitted an affidavit explaining the basis for his allegations. For instance, he could have identified the software Beliveau improperly installed on his phone, the location of the phone during the installation, or the Alabama customers or employees with whom Piediscalzi and Flynn communicated. His failure to do so suggests any jurisdictional discovery

---

[4] In his opposition, Matthews speculates that Flynn and Piediscalzi must be servicing Antaris's Alabama customers, but he does not offer any facts to support the implication that Flynn and Piediscalzi are the only Antaris's employees who could support Alabama customers. Matthews also "reasonably believes" Flynn and Piediscalzi pay Alabama payroll taxes based on "the experience of a former Antaris employee who at all material times lived in California, but paid Alabama withholdings while employed with Antaris." (Doc. 25 at 8). Matthews does not identify this former Antaris employee or offer any affidavit evidence to support this allegation.

16

Matthews seeks would serve merely as a fishing expedition rather than a good faith effort to use targeted discovery to supplement the jurisdictional allegations. *See Wolf*, 683 F. App'x at 792. Accordingly, the court will not delay ruling on the Individual Defendants' motion to dismiss for lack of personal jurisdiction.

### 2. The Individual Defendants Lack of Contacts with Alabama

The court is therefore left to decide the question of personal jurisdiction on the parties' submissions. The Individual Defendants' uncontroverted affidavits establish they have limited, if any, contacts with the State of Alabama. Beliveau's affidavit establishes he has no contacts with the State of Alabama. Flynn has a single contact with Alabama—a 2019 visit to the state for a meeting with his former employer. Piediscalzi's contacts with Alabama relate to his provision of technical support to two of Antaris's customers. As stated above, these affidavits—which contain specific, factual declarations within each affiant's personal knowledge—suffice to shift the burden back to Matthews to produce evidence to support his claims of personal jurisdiction over the Individual Defendants. *See Mazer*, 556 F.3d at 1260. Matthews, however, failed to respond with competent evidence to establish jurisdiction and instead relied on the factual allegations of the amended complaint.

Based on the current record, none of the Individual Defendants' contacts with Alabama arise out of or are related to Matthews's claims, and they have

established they have not purposefully availed themselves of the privileges of conducting activities in Alabama. More specifically, there is no evidence the Individual Defendants had any contacts with Alabama that were related to Matthews's claims, involved an act in which they purposely availed themselves of the privilege of conducting activities in Alabama, or were such that they could reasonably anticipate being haled into an Alabama court. *See Del Valle*, 56 F.4th at 1276. Further, there is no evidence that any of the Individual Defendants committed a single, tortious act aimed at Alabama that they should have anticipated would cause harm within Alabama. *See id.* Subjecting the Individual Defendants to personal jurisdiction on the facts before the court would therefore offend traditional notions of fair play. Accordingly, the court will dismiss the Individual Defendants for lack of personal jurisdiction.

## B. Tortious Interference with Business Relationships

The defendants ask the court to dismiss Count V for tortious interference with business relationships because (1) Matthews's amended complaint does not identify a protectible business interest and (2) the defendants are not strangers to the purported business relationships. Matthews responds that Alabama law protects prospective business and, as a competitor, Antaris is a stranger to Matthews's relationship with prospective customers.

18

To state a claim under Alabama law for tortious interference with business relationships, Matthews must plead facts that, if proven, would show "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009). As Matthews notes, Alabama law prohibits the improper interference in business relationships even when an existing contract is lacking because "[i]t is the right to do business in a fair setting that is protected." *Id.* (citing *Utah Foam Prods., Inc. v. Polytec, Inc.*, 584 So. 2d 1345, 1353 (Ala. 1991)). Existing contracts are more protected than prospective contracts, but the existence of a binding contract is just one consideration in whether the actor's conduct is improper. *See id.* Regarding prospective customers, the question is whether an expectancy has "matured to the stage that it is deemed worthy of protection from interference." *Id.* (internal citation and quotation omitted).

The amended complaint contains virtually no allegations regarding Matthews's unidentified, prospective customers, other than to allege they were also customers of Antaris. Another court in this district found a plaintiff's "bare allegation" that a specific customer was a "potential purchaser" warranted dismissal. *See Fuel-From-Waste, LLC v. Gold Coast Commodities, Inc.*, No. 2:15-CV-01431-JEO, 2017 WL 75754, at *5 (N.D. Ala. Jan. 9, 2017). In *Fuel-From-*

19

*Waste*, the operative complaint included no allegations about the plaintiff's business dealings with the identified potential purchaser, such as whether the potential purchaser ever discussed the potential purchase or whether the plaintiff expected to contract with the potential purchaser. *Id.* at \*5. Further, the complaint included no factual support for its assertion that the defendant was "fully aware" of the alleged business relationship between the plaintiff and the potential purchaser. *Id.* Thus, the court found the plaintiff failed to state a claim for tortious interference.

Like in *Fuel-From-Waste*, Matthews's amended complaint contains insufficient allegations to demonstrate a protectible business interest. Matthews does not identify a single, prospective customer, and he alleges no facts showing a business expectancy had matured to a stage rendering it worthy of protection. Accordingly, the court will dismiss Count V for tortious interference with business relationships.[5]

---

[5] Because the amended complaint does not identify any prospective customer of Matthews, the court cannot fairly reach Antaris's argument that it is not a stranger to the subject relationship. Nevertheless, the court rejects Antaris's assertion that it can never be a stranger to a relationship between one of its customers and Matthews. The parties have not explained the nature of their respective businesses, other than to mention Antaris does business with health clubs and fitness centers, but the court reads Matthews's amended complaint to suggest he began a separate business that competed in some form with Antaris and sought to establish distinct relationships with at least some of Antaris's customers. Antaris has not satisfactorily explained how it meets any of the elements necessary to show that it is not a stranger to the relationships between Matthews and his prospective clients. *See MAC East, LLC v. Shoney's*, 535 F.3d 1293, 1297 (11th Cir. 2008) (a defendant is not a stranger to a business relationship when (1) the defendant is an essential entity to the relationship, (2) the relationship is inextricably a part of or dependent upon the defendant's contractual or business relationship, (3) the defendant would benefit

### C. Conspiracy

Matthews alleges (1) Antaris USA is a wholly owned subsidiary of Antaris, Inc., (2) Beliveau is an independent contractor of Antaris, and (3) Piediscalzi and Flynn are employees of Antaris. (Doc. 14 at 2). Regarding his claim for conspiracy, Matthews alleges the following: "Antaris[, Inc.] and Antaris USA, through their respective constituent individuals and entities, together and/or in cooperation with one or more of the Individual Defendants combined to accomplish the unlawful acts through the unlawful means described above all to the detriment of Plaintiff." (Doc. 14 at 10). This language indicates Antaris, rather than the Individual Defendants, is Matthews's focus in the conspiracy claim. Even if the conspiracy count were drafted more broadly, the Individual Defendants have been dismissed, so the only question remaining is whether Antaris can conspire with its employees or agents. As explained below, it cannot.

Pursuant to the intracorporate conspiracy doctrine, "a corporation may not be held liable for any alleged conspiracy with its own employees or agents." *See Tuscaloosa Hyundai, Inc. v. Hyundai Motor Am., Inc.*, No. 7:21-CV-00571-LSC, 2023 WL 6296929, at \*27 (N.D. Ala. Sept. 27, 2023) (internal quotations and citation omitted). This is because

economically from the relationship, or (4) both the defendant and plaintiff are parties to a comprehensive interwoven set of relationships).

21

> the acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.

*McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). Basic agency principles hold that the acts of a corporation's agents are those of a single legal actor. *Id.* "Therefore, just as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *Id.* The intracorporate conspiracy doctrine also bars conspiracy claims between a parent company and its wholly owned subsidiary. *See Tuscaloosa Hyundai,* 2023 WL 6296929, at *10.

### 1. Conspiracy between Antaris, Flynn, and Piediscalzi

Citing *McAndrew*, Matthews contends the intracorporate conspiracy doctrine does not apply when employees act outside the scope of their employment or the conspiracy includes independent third parties.[6] He argues that without the benefit of discovery, he alleged the Individual Defendants acted either on their own or at the direction of Antaris, which this court should find sufficient to allege the Individual Defendants acted beyond the scope of their employment or agency. Matthews states, "It is difficult to imagine a scenario in which defaming a former

---

[6] The Eleventh Circuit "treats scope of employment more as part of the formulation of the intracorporate conspiracy doctrine itself," rather than as an exception to the doctrine. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 n.30 (11th Cir. 2010).

co-worker to prospective customers is considered part of the scope of an individual's employment. At this point in the proceedings, it is plausible that both Flynn and Piediscalzi conspired together, without direction from Antaris, to damage to [sic] Plaintiff." (Doc. 25 at 13). In reply, the defendants argue the amended complaint does not allege Flynn and Piediscalzi acted outside the scope of their employment.

Because Flynn and Piediscalzi will be dismissed from this action for lack of personal jurisdiction, Matthews's argument that they could have conspired with each other, but not Antaris, does not save his conspiracy claim. Additionally, while *McAndrew* recognizes the intracorporate conspiracy doctrine applies when employees are acting within the scope of their employment, Matthews has not cited a case finding a company liable for a civil conspiracy between it and its employees who were acting outside the scope of their employment. Further, the amended complaint does not allege that Flynn and Piediscalzi acted outside the scope of their employment. Instead, it alleges they acted either on their own—in which case Antaris was necessarily uninvolved—or at Antaris's direction "as part of a calculated strategy to damage Matthews's reputation, retain Antaris's customers, prevent legitimate competition, and to protect [Antaris's] financial interests," in

23

which case the acts were taken within the scope of their employment with Antaris.[7] (Doc. 14 at 5).

### 2. Conspiracy between Antaris and Beliveau

As for Beliveau, Matthews asserts that "independent contractors are legally distinct actors capable of conspiring with corporations, so long as they are not acting as agents of the corporation" and cites *S. Field Maint. & Fabrication LLC v. Killough*, No. 2:18-CV-581-GMB, 2018 WL 4701782, at *9 (M.D. Ala. Oct. 1, 2018). *Killough* does not discuss or otherwise support this proposition, though it does state:

> Under the intra-corporate conspiracy doctrine, "there is no 'conspiracy' where the only parties to the alleged conspiracy are the corporation and one of its agents and the corporation's liability is predicated upon the theory of respondeat superior through the acts of the agent with whom it allegedly conspired."

*Id.* (quoting *Williams v. Marcum*, 519 So. 2d 473, 475 (Ala. 1987)). In reply, the defendants correctly note that Matthews's allegations concerning Beliveau sound in agency.

The court agrees with the defendants. Matthews's allegations concerning Beliveau undercut his claim that Antaris conspired with Beliveau. In his claim for invasion of privacy, the amended complaint states:

---

[7] While *McAndrew* recognized an exception to the intracorporate conspiracy doctrine for intracorporate criminal conspiracies, *see* 206 F.3d at 1039, there is no such criminal conspiracy alleged here.

24

> The Antaris Defendants and Beliveau, either on his own, at the direction of the Antaris Defendants, or both, engaged in a deliberate and systematic invasion of Matthews's privacy by installing software on Matthews's phones, tablet, and laptop (including the phone, iPad and laptop used by his wife) that restricted Matthews's access to potential customers of his new business, tracked his e-mail accounts, and monitored his activities.

(Doc. 14 at 4). This claim leaves open one of two possibilities, neither of which support a conspiracy claim. On one hand, if Beliveau acted on his own, there can be no conspiracy because a conspiracy requires more than one actor. On the other hand, if Beliveau acted at the direction of Antaris as its independent contractor, the intracorporate conspiracy doctrine dictates there was no conspiracy because "under basic agency principles, the acts of a corporation's agents are considered to be those of a single legal actor." *McAndrew*, 206 F.3d at 1036.

As explained above, the amended complaint alleges Antaris conspired with its agents or employees, but the intracorporate conspiracy doctrine holds that these allegations do not establish a civil conspiracy. Accordingly, the court will dismiss Count IV for conspiracy.

## V. Conclusion

For the reasons set forth above, the defendants' partial motion to dismiss is **GRANTED**. (Doc. 18). Beliveau, Flynn, and Piediscalzi are **DISMISSED WITHOUT PREJUDICE**. Count IV for conspiracy and Count V for tortious

interference with business relationships are both **DISMISSED WITHOUT PREJUDICE**.

**DONE** this 25th day of March, 2026.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE