FILED

2026 Jun-30  PM 04:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM E. MATTHEWS, VI, | ) | |
| | ) | |
| Plaintiff/Counter Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTARIS TECHNOLOGIES, INC., *et al.*, | ) | Case No. 2:25-cv-00889-SGC |
| | ) | |
| Defendants/Counter Plaintiffs/ Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GYM BUSINESS MANAGER, LLC, | ) | |
| | ) | |
| Third Pary Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

This action stems from a business relationship between plaintiff/ counterclaim defendant William E. Matthews, VI, and defendants/counterclaim plaintiffs Antaris Technologies, Inc. ("Antaris, Inc."), and Antaris Technologies USA, Inc. ("Antaris USA") (collectively, "Antaris"), that went south. Matthews and third-party defendant Gym Business Manager, LLC ("GBM"), have moved to

---

[1] The parties have unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 30).

dismiss Antaris's counterclaim and third-party complaint. (Doc. 26).[2] Their motion is fully briefed and ripe for adjudication. (Docs. 32, 33). For the reasons set forth below, their motion will be denied.

## I.  Procedural History

Matthews initiated this action by filing a complaint in the Circuit Court of Jefferson County, Alabama, on April 24, 2025, naming as defendants Antaris, Louis Beliveau, Giovanni Piediscalzi, and James Flynn. (Doc. 1-1). Invoking this court's diversity jurisdiction, the defendants timely removed the action on June 9, 2025. (Doc. 1). The defendants then moved to dismiss the original complaint. (Doc. 10).

After Matthews amended his complaint on August 14, 2025, the court denied as moot the defendants' first motion to dismiss. (Docs. 14, 15). The defendants then moved to partially dismiss the amended complaint.[3] (Doc. 18). Antaris also filed an answer to Matthews's amended complaint, a counterclaim against Matthews, and a third-party complaint against GBM. (Doc. 19). The counterclaim/third-party complaint states three causes of action: (1) breach of contract against Matthews; (2) violation of the Defend Trade Secrets Act, 18

---

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

[3] The defendants' partial motion to dismiss was resolved via a separate memorandum opinion and order. (Doc. 36).

U.S.C. § 1836 *et seq.* ("DTSA") against Matthews and GBM; and (3) defamation against Matthews and GBM. (*Id.*).

In September 2025, Matthews and GBM moved to dismiss Antaris's counterclaim and third-party complaint. (Doc. 26). Antaris timely responded, and Matthews and GBM timely replied. (Docs. 32, 33).

## II. Alleged Facts

Antaris alleges the following facts. Antaris provides club management software for health and fitness club clients in the United States, Canada, and Barbados. (Doc. 19 at 13). The industry is highly competitive, and Antaris's confidential and trade secret information is essential to its success. (*Id.*). Antaris's confidential and trade secret information includes its software architecture; current feature set; development pipeline and processes; lists of past, present, and prospective clients; those clients' software feature preferences, business requirements, revenues, and expenses; lists of past, present, and prospective partners; contracts and related documents; financial results and records; and sales and accounting records. (*Id.*). Antaris protects this information by using confidentiality and nondisclosure agreements, secure and controlled access to internal applications and servers, and other measures. (*Id.*).

Antaris employed Matthews from January 2020 until April 2024. (*Id.* at 14). During his employment, Matthews had access to Antaris's confidential

information. (*Id.*). In September 2024, Matthews and Antaris entered into a Settlement Agreement and General Release covering Matthews's termination of employment. (*Id.*). The agreement included a confidentiality clause that protected, among other things, Antaris's trade secrets. (*Id.*). The agreement also contained a mutual non-disparagement clause in which Matthews agreed not to "disparage, criticize, or speak negatively" about Antaris. (*Id.* at 16).

Following the termination of his employment with Antaris, Matthews started GBM, a club management software provider that directly competed with Antaris. (*Id.*). While developing and marketing GBM's products, Matthews and GBM used, disclosed, and otherwise misappropriated Antaris's confidential information in violation of the settlement agreement in an attempt to steal Antaris's current and potential clients. (*Id.*). More specifically, Matthews has access to Antaris's client lists, client renewal dates, pricing information, credit card fee information, and monthly revenue information, and Matthews and GBM have used this information to improperly attempt to poach Antaris's clients. (*Id.*). Matthews and GBM have hired another former Antaris employee, Andrew Latta, who is also subject to a confidentiality agreement with Antaris. (*Id.* at 17).

In February and April 2025, Matthews knowingly made false statements about Antaris's software, including statements that Antaris's software does not allow credit card surcharging. (*Id.* at 18). Antaris's software does allow credit card

4

surcharging, and some Antaris clients use this feature. (*Id.*). Matthews also told Antaris's prospective clients that Antaris is in "major legal trouble." (*Id.*).

## III. Standard of Review

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

Pursuant to Rule 12(d), when ruling on a Rule 12(b)(6) motion, a district court should generally not consider matters outside the pleadings without treating the motion as one for summary judgment. If it treats the motion as one for summary judgment, the court must give the parties a reasonable opportunity to present all evidence that is relevant to the motion. Fed. R. Civ. P. 12(d). However,

a "judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings. According to case law, 'not considering' such matters is the functional equivalent of 'excluding' them—there is no more formal step required." *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010). There are, however, two exceptions to this rule: (1) the incorporation-by-reference doctrine and (2) judicial notice. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024). Under the incorporation-by-reference doctrine, a district court may consider an exhibit to the motion if the exhibit is central to the plaintiff's claim and the authenticity of the exhibit is not challenged. *See id.; Harris v. Ivax Corp.,* 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute."). Further, a "district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment," *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)); *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892–93 (11th Cir. 2013) (comparing complaints from two separate cases to determine whether the same facts were involved for purposes of res judicata and ultimately affirming district court's dismissal under Rule 12(b)(6)); *Davila v. Delta*

*Air Lines, Inc.*, 326 F.3d 1183, 1184–85 (11th Cir. 2003) (affirming district court's dismissal on grounds of res judicata under Rule 12(b)(6)).

## IV. Analysis

Matthews and GBM present three arguments in support of their motion to dismiss. First, they assert that res judicata bars the counterclaim and third-party complaint. Next, they argue Antaris failed to state a claim for a violation of the DTSA because it did not describe the trade secrets with sufficient particularity. Finally, they contend their statements about Antaris's software and "major legal trouble" are not actionable because the first is true and the second is opinion.

### A. Res Judicata

Matthews and GBM attach to their motion to dismiss a copy of a complaint and order in a lawsuit Antaris filed against Matthews, GBM, and Money Movers, Inc. ("MMI"), in the United States District Court for the Northern District of California, *Antaris Technologies, Inc. v. Matthews*, Case No. 25-cv-04048-RS (the "California Action").[4] (Docs. 26-1, 26-2). Matthews, GBM, and MMI moved to dismiss the action. The district court (1) dismissed Matthews and GBM for lack of personal jurisdiction, (2) dismissed Antaris's DTPA claim against MMI as insufficiently pled, (3) allowed Antaris's remaining claims against MMI to proceed, and (4) gave Antaris 30 days to amend its complaint. (Doc. 26-2 at 11).

---

[4] The California Action was filed on May 9, 2025, about two weeks after this action was filed. (Doc. 26-1 at 13).

Antaris did not amend its complaint, instead voluntarily dismissing the action. (Doc. 32-1). Matthews and GBM argue Antaris's failure to amend rendered the dismissal of the California Action a dismissal on the merits. Therefore, they contend res judicata bars Antaris's claims here.

In response, Antaris explains the court dismissed the claims in the California Action without prejudice, so res judicata is not implicated. It also argues Matthews and GBM are judicially estopped from making these arguments because they argued in the California Action that Antaris could sue them in Alabama. On reply, Matthews and GBM do not directly address Antaris's contention that the dismissal of their claims in the California Action was without prejudice. Instead, they appear to rely on their prior argument that Antaris's failure to amend its complaint within 30 days renders the dismissal one with prejudice.

### 1.  Applicable Law

The doctrine of res judicata holds that "a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). The party invoking the doctrine bears the burden of establishing four initial elements: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) both cases involve the same parties or their privies; and (4) both cases involve the same causes of action.

*Id.* If the party establishes those four elements, the court next determines whether the claim in the new lawsuit was or could have been raised in the prior lawsuit; if so, res judicata applies and bars the subsequent action. *See id.* "If even one of these elements is missing, res judicata is inapplicable." *Id.*

### 2.  The California Action

Antaris's complaint in the California Action is substantially identical to its counterclaim and third-party complaint here, at least with respect to the underlying factual allegations and its DTSA claim. That complaint also included claims for (1) violation of the California Uniform Trade Secrets Act, (2) trade libel, (3) unfair competition under California Business and Professional Code § 17200, *et seq.*, and (4) intentional interference with contractual relations. (Doc. 26-1).

On July 15, 2025, the Northern District of California found it lacked personal jurisdiction over Matthews and GBM and dismissed them without prejudice. (Doc. 26-2 at 3-4 (the "California Order")). The district court also dismissed Antaris's trade secret misappropriation claims because the complaint did not contain sufficient facts to support those claims. (*Id.* at 10-11). More specifically, the court found Antaris's identification of its trade secrets "refer[red] to mere broad categories of information that *potentially* or *generally* may be subject to trade secret protection." (*Id.* at 10). It further found Antaris "fail[ed] to allege circumstances to support an inference that [Matthews and GBM] have taken

advantage of at least some of the information. The allegations [did] not go beyond mere speculation that [Antaris's] trade secrets are being used." (*Id.* at 11). In its conclusion, the court stated the DTSA claims were "dismissed as insufficiently pled" and did not state whether that dismissal—or the one for lack of personal jurisdiction—was with or without prejudice; however, in the paragraph just before the conclusion, the order referenced "[its] dismissal without prejudice of the trade secret misappropriation claims against all Defendants." (*Id.*). Following this order, Antaris voluntarily dismissed its remaining claims without prejudice on July 24, 2025—just 9 days after the California court dismissed Matthews and GBM and well before the thirty-day deadline for Antaris to amend its complaint with respect to its claims against MMI. (Doc. 32-1).

### 3. The California Order was not a final judgment on the merits.

Matthews and GBM insist that a dismissal under Rule 12(b)(6) is a judgment on the merits. They cite *N.A.A.C.P. v. Hunt*, which notes, "[T]he Supreme Court has clearly stated that '[t]he dismissal for failure to state a claim under [Rule 12(b)(6)] is a judgment on the merits." 891 F.2d 1555, 1560 (11th Cir. 1990) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981)). In response, Antaris asserts that "[a] dismissal without prejudice is not an adjudication on the merits and thus does not have a *res judicata* effect." *See Hughes v. Lott*, 350 F.3d 1157, 1161 (11th Cir. 2003). Antaris also argues that a

dismissal for lack of personal jurisdiction does not preclude subsequent litigation in the appropriate forum. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1221 (11th Cir. 1999).

In *Hunt*, the Eleventh Circuit considered whether a district court decision granting a motion to dismiss was an order on the merits. The order did not indicate whether the claims were dismissed under Rule 12(b)(6) or Rule 41(b), nor did it state whether the dismissal was with or without prejudice. 891 F.2d at 1560. *Hunt* held it was a final adjudication on the merits because the order did not indicate it was dismissed without prejudice. By contrast, in *Hughes*, the Eleventh Circuit found a dismissal order that expressly stated it was without prejudice did not trigger res judicata. 350 F.3d at 1161. Further, in *Posner*, the Eleventh Circuit concluded a district court erred when it dismissed claims with prejudice on jurisdictional grounds and ordered the court to dismiss those claims without prejudice. 178 F.3d at 1221.

Again, Matthews and GBM do not directly address the "without prejudice" language of the California Order. Instead, they argue Antaris's failure to amend its complaint in the California Action rendered the ruling a final order after the expiration of the amendment period—even though Antaris voluntarily dismissed

11

the action without prejudice well before that deadline expired.[5] The cases Matthews and GBM rely on to support their position are distinguishable. First, while both state that an order dismissing a complaint with leave to amend becomes final if the plaintiff does not amend or seek an extension before the deadline expires, they do not present the same circumstances as the California Action where: (1) the order dismissed without prejudice certain parties and claims, but not all parties and claims, with leave to amend and (2) the plaintiff thereafter voluntarily dismissed the entire action before the deadline to amend expired. *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719–21 (11th Cir. 2020); *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126 (11th Cir. 1994), *abrogated in part on other grounds by Coney Island Auto Parts Unlimited, Inc. v. Burton*, 607 U.S. 155 (2026). Rather, *Automotive Alignment* and *Hertz* both analyze the point at which a district court loses jurisdiction after an order dismissing a complaint in its entirety. Neither case addresses the res judicata effect of those dismissal orders. In short, Matthews and GBM offer no authority governing the precise situation present here.

The Eleventh Circuit, however, recently considered a similar issue when examining whether a party was a prevailing party and thus entitled to attorney fees:

---

[5] Per Rule 41(a)(1)(B), when a plaintiff voluntarily dismisses its complaint under Rule 41(a), the dismissal is without prejudice unless (1) the notice or stipulation states otherwise or (2) the plaintiff previously dismissed any federal- or state-court action based on or including the same claim.

> The only problem in this otherwise simple case arises from the district court's confusing handling of its judgment. On one hand, it granted a Rule 12(b)(6) motion to dismiss for failure to state a claim. As we have explained, this posture generally signals a judgment on the merits. But on the other hand, the district court dismissed [the plaintiff's] claims "without prejudice." And this phrase normally communicates that a dismissal is not on the merits. *See Salcedo v. Hanna*, 936 F.3d 1162, 1173 n.12 (11th Cir. 2019). It is not easy to reconcile these inconsistent features of the district court's judgment, and they point in different directions on the question of whether the judgment would be claim preclusive in a future action between the same parties raising the same claims. Final merits judgments are, as a rule, claim-preclusive, *see Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003); then again, we usually understand "without prejudice" to mean that a judgment is not claim-preclusive, *see Hughes v. Lott*, 350 F.3d 1157, 1161 (11th Cir. 2003).

*Beach Blitz Co. v. City of Miami Beach, Fla.*, 13 F.4th 1289, 1299–300 (11th Cir. 2021). The court ultimately found the plaintiff was not the prevailing party because the judgment was involuntary, carried judicial imprimatur, denied leave to amend, and resulted from a Rule 12(b)(6) determination. *Id.* at 1300. The district court's "without prejudice" label did not alter that conclusion because "in every practical sense, the district court rebuffed [the plaintiff's] effort . . ."

In his concurrence, Judge Newsom addressed

> the uncomfortable fact that the district court dismissed [the plaintiff's] claims for failure to state a claim under Rule 12(b)(6), but did so, expressly, "without prejudice." The majority calls that a "problem." Maj. Op. at 1300. I think it's more than that, because I think the district court's decretal language—"ORDERED AND ADJUDGED that this case is DISMISSED WITHOUT PREJUDICE"—is more than what the majority calls a "label." *Id.* at 1300. Whether we like it or not, those words—including the "without prejudice" part—constitute the district court's *judgment*. And that judgment matters.

13

Although courts typically explain their legal reasoning in opinions, they "reduce their opinions . . . to judgments precisely to define the rights and liabilities of the parties." *Jennings v. Stephens*, 574 U.S. 271, 277, 135 S. Ct. 793, 190 L.Ed.2d 662 (2015). "If there be any one thing done in the progress of a cause, from its commencement to its conclusion, that is peculiarly and emphatically a judicial act, it is the rendition of judgment." 1 Henry C. Black, *A Treatise on the Law of Judgments* § 106, at 150 n.1 (2d ed. 1902). "The decree," *i.e.*, the judgment, "is the dominant act." *Baxter v. Buchholz-Hill Transp. Co.*, 227 U.S. 637, 638, 33 S.Ct. 402, 57 L.Ed. 681 (1913). So in a contest between, on the one hand, an opinion that to all appearances seems to be an adjudication "on the merits" and, on the other, a judgment dismissing the case "without prejudice," the latter must prevail.

*Id.* at 1308 (Newsom, J., concurring).

This court agrees with Judge Newsom's conclusion that a district court's dismissal of a claim without prejudice clearly indicates the court does not intend to render a claim-preclusive judgment on the merits. In the California Action, although the order dismissing Matthews and GBM for lack of personal jurisdiction and dismissing the DTSA claim was involuntary and carried judicial imprimatur, the court (1) plainly stated the DTSA claim was "dismissed as insufficiently pled," (2) dismissed that claim "without prejudice," (3) did not engage in the underlying merits of the claim, (4) allowed Antaris to amend its complaint if it wished to do so, and (5) did not resolve the entire action. (Doc. 26-2 at 10). And, as discussed above, Antaris dismissed the remaining claims without prejudice. Unlike in *Beach Blitz*, these factors indicate a non-merits dismissal that does not implicate res judicata. *See Hughes*, 350 F.3d at 1161; Fed. R. Civ. P. 41(b) ("*Unless the*

14

*dismissal order states otherwise*, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." (emphasis added)).

### 4. The claims in this action could not have been raised in the prior action.

Even if the California Order could be interpreted as a final judgment on the merits, this court must also consider whether the claims in this action could have been raised in the prior action. As to Matthews and GBM, they could not.

Matthews and GBM argue res judicata bars Antaris's claims against them for breach of contract and defamation because they could have been brought in the California Action. They fail, however, to explain how those causes of action—and the DTSA claim—could have been brought in the California Action if, as they successfully argued, the Northern District of California lacked personal jurisdiction over them.

By finding it lacked personal jurisdiction over Matthews and GBM, the Northern District of California essentially found Antaris could not bring *any* claims against Matthews and GBM in that court. "Even where a second action arises from some of the same factual circumstances that gave rise to a prior action, res judicata is inapplicable if formal jurisdictional or statutory barriers precluded the plaintiff from asserting its claims in the first action." *Computer Assocs. Int'l, Inc. v. Altai,*

15

*Inc.,* 126 F.3d 365, 370 (2d Cir. 1997); *see also Lefkowitz v. Bank of New York,* 676 F. Supp. 2d 229, 270 (S.D.N.Y. 2009) (noting that res judicata "does not afford a defense, however, if the initial forum lacked the authority to grant the full measure of relief sought in the later litigation"). Because the Northern District of California lacked personal jurisdiction over Matthews and GBM, it had no authority to grant Antaris the full measure of relief it seeks in this action. *See Lefkowitz*, 676 F. Supp. 2d at 270. Accordingly, Antaris's claims could not have been raised against Matthews and GBM in the prior action, and res judicata does not bar Antaris from bringing its claims here. *See In re Piper Aircraft*, 244 F.3d at 1296.

## B. DTSA

Matthews and GBM also ask the court to dismiss the DTSA claim because (1) Antaris has not sufficiently alleged the information that constitutes its trade secrets and (2) at least some of the information Antaris contends constitutes its trade secrets is public information, such as the listing of features on Antaris's website and the identities of gym and fitness centers. In response, Antaris argues its identification of its trade secrets is sufficient to meet the pleading standard, and it takes steps to safeguard the confidentiality of its trade secrets. It also objects to the use of the user manual because it is outside the pleadings and does not contain all information that Antaris considers its trade secrets. Matthews and GBM do not

16

address these arguments in reply, other than to insist the court should dismiss the DTSA count because the Northern District of California already did so.

The DTSA "created a private civil cause of action for trade secret misappropriation in which an owner of a trade secret that is misappropriated may bring a civil action if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." *Parker v. Petrovics*, No. 2:19-CV-00699-RDP, 2020 WL 3972761, at *4 (N.D. Ala. July 14, 2020) (alterations adopted, internal citations and quotations omitted); *see also* 18 U.S.C. § 1836(b)(1). To state a claim under the DTSA, a plaintiff must allege (1) he possessed information of independent economic value that (a) he lawfully owned and (b) for which he took reasonable measures to keep secret; (2) the defendant used and/or disclosed that information; and (3) the defendant had a duty to maintain the secrecy of the information he disclosed. *Id.*

> In the California Action, the court found Antaris referred only to
>
> mere broad categories of information that *potentially* or *generally* may be subject to trade secret protection. [Antaris] also fail[ed] to allege circumstances to support an inference that Defendants have taken advantage of at least some of the information. The allegations do not go beyond mere speculation that its trade secrets are being used.

(Doc. 26-2 at 10-11). Here, Antaris's counterclaim and third-party complaint contain an allegation not included in the California Action:

> Matthews and GBM attempted to use Antaris's Confidential Information to steal Antaris's clients and potential clients. In

17

particular, Matthews has access to Antaris's client lists, client renewal dates, pricing information, credit card fee information, and monthly revenue information. Matthews and GBM have misappropriated this Confidential Information in an improper effort to poach Antaris's clients and potential clients.

(Doc. 19 at 16). The court is satisfied this additional allegation sufficiently narrows the information, so Matthews and GBM can "ascertain at least the boundaries within which the secret lies." (*See* Doc. 26 at 8, citing *Masimo Corp. v. Apple Inc.*, No. SACV2048JVSJDEX, 2020 WL 6653652, at *2 (C.D. Cal. Oct. 13, 2020)).

The court is also unpersuaded by Matthews and GBM's argument that Antaris's user manual is publicly available and its past, current, and prospective client list is not protectable because "every gym, fitness center, and health club is a prospective customer, and in this day and age, every such facility has a website bearing the facility's contact information." (Doc. 26 at 9). First, the user manual is not referenced in Antaris's complaint, and Matthews and GBM do not explain why this court can consider it in the context of its motion to dismiss. Rule 12(b)(6) requires this court to consider only the pleadings in evaluating Matthews and GBM's motion to dismiss. In its discretion, the court declines to convert their motion into one for summary judgment given the early stages of these proceedings, and it will not consider the user manual. Further, Matthews and GBM's argument about potential clients wholly overlooks Antaris's new, more specific allegation that Matthews and GBM have misappropriated not only Antaris's client list but the

18

information regarding client renewal dates, pricing, credit card fees, and monthly renewal dates. Accordingly, Antaris's allegations sufficiently state a claim under the DTSA, and the court will deny Matthews and GBM's motion to dismiss Count II.

## C. Defamation

Under Alabama law, a party seeking to establish defamation must show (1) a false and defamatory statement concerning the plaintiff,[6] (2) an unprivileged communication of the statement to a third party, (3) fault amounting to at least negligence on the part of the defendant, and (4) either actionability of the statement irrespective of special harm or special harm caused by publication of the statement. *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003).

Citing *Medical Properties Trust,* Matthews and GBM argue that "[a] statement must be false before it may be actionable at all." 2023 WL 4356355, at *10. They attach to their motion to dismiss what appears to be an Antaris promotional newsletter that states:

Surcharge Option

You asked – we listened! Starting in June 2025, for those of you processing credit cards directly via Fiserv Cardconnect, you will not

---

[6] "A statement is defamatory if it 'tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating with him.'" *Med. Props. Tr., Inc. v. Viceroy Rsch.*, No. 2:23-CV-00408-RDP, 2023 WL 4356355, at *10 (N.D. Ala. June 30, 2023) (quoting Restatement (Second) of Torts § 559 (1977)).

> have an option to reduce your credit card fees by automatically adding a percentage fee to all of your credit card transactions. To learn more about the surcharging program, please follow up with [Piediscalzi].

(Doc. 26-4). They contend this newsletter proves any statements about Antaris's lack of credit card surcharging were true and therefore not actionable. They further argue a statement that Antaris is in "major legal trouble" is nothing more than opinion, which is not actionable in a defamation claim.

Antaris responds that the newsletter is outside the pleadings and therefore should not be considered in the context of a Rule 12(b)(6) motion. It also explains that this newsletter was directed toward customers who used Fiserv Cardconnect, which is just one of several payment processing networks used by Antaris's clients. Antaris also rejects Matthews's suggestion that the phrase "major legal trouble" is simply one of opinion. Matthews and GBM do not address these arguments in their reply.

As with the user manual, Matthews and GBM offer no argument regarding whether the court should consider the newsletter under Rule 12(b)(6). The court will exercise its discretion and decline to convert the motion to dismiss into one for summary judgment, and it will not consider the newsletter. Antaris has sufficiently alleged its software allows its clients to surcharge credit card fees. (Doc. 19 at 18, 24.) Accordingly, for purpose of this motion, any statements made by Matthews and/or GBM to the contrary are false.

Further, Matthews and GBM's argument regarding Antaris's "major legal trouble" is conclusory. They provide no analogous case supporting their argument, instead simply citing *Kelly v. Arrington*, 644 So. 2d 546 (Ala. 1993) for the proposition that a "statement of opinion relating to a matter of public concern which does not contain a provably false factual connotation will receive full constitutional protection." There are no facts before the court concerning what, if any, legal issues Antaris faced. This court therefore cannot analyze whether this statement is "provably false." Through the benefit of discovery, it is conceivable that Antaris may prove it faced no legal troubles whatsoever, in which case Matthews and GBM's statement to the contrary may be provably false. *See Medical Properties Trust, Inc.*, 2023 WL 4356355, at *10-11. Accordingly, Antaris has plausibly stated a claim for defamation concerning both alleged statements, and Matthews and GBM's motion to dismiss Count III will be denied.

## V. Conclusion

For the reasons set forth above, Matthews and GBM's motion to dismiss the counterclaim and third-party complaint is **DENIED**. (Doc. 26). The stay of discovery is **LIFTED**. (Doc. 35). The parties are **ORDERED** to conduct a Rule 26(f) conference within 14 days of the date of this order. The parties **SHALL** file a report of their planning meeting within 7 days thereafter. The parties are

21

**DIRECTED** to review the court's July 22, 2025 order for other instructions regarding the Rule 26(f) conference. (Doc. 8).

**DONE** this 30th day of June, 2026.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE